**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.:

JUANITA MIMS,
JORIN WILLIAMS,
TONYA MOBLEY,
JEFFREY ORTEGA,
MELICA HARRIS,
and MARCUS BLUE
*et. al.*,

       Plaintiffs,

vs.

YOUTH SERVICES INTERNATIONAL, INC.,
YOUTH SERVICES INTERNATIONAL HOLDING, INC.,
JFS DEVELOPMENT, LLC,
And JAMES SLATTERY,
*et. al.*

       Defendants.

_____/

## **COMPLAINT**

Plaintiffs, JUANITA MIMS, TONYA MOBLEY, JEFFREY ORTEGA, JORIN WILLIAMS, MELICA HARRIS, and MARCUS BLUE on behalf of themselves and all similarly situated, by and through this undersigned counsel, hereby, file this Complaint against Defendants, YOUTH SERVICES INTERNATIONAL, INC. ("YSI"), YOUTH SERVICES INTERNATIONAL HOLDING INC. ("YSI Holding"), JFS DEVELOPMENT, LLC ("JFS"), and JAMES SLATTERY, ("Slattery"), individually, collectively, ("Defendants") and alleges as follows:

1

## INTRODUCTION

1.       This is a proceeding against YSI and Slattery for monetary damages to redress the deprivation of rights secured to Plaintiff, Williams, under the overtime provision of Section 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA").

## JURISDICTION

2.       The jurisdiction of the Court over this controversy is based on 29 U.S.C.  §216(b) and 28 U.S.C. § 1331.

## VENUE

3.       The venue of this Court over this controversy is based on the following:

a.       The unlawful employment practices alleged below occurred and/or were committed within Broward County and Palm Beach County, Florida. Accordingly, venue lies in the United States District Court of Florida pursuant to 28 U.S.C. § 1391(b)

b.       Defendant, Youth Services International, Inc., was and continues to be a Florida corporation doing business within this judicial district;

c.       Defendant, JFS Development, LLC, is the parent company of YSI and was and continues to operate out of Sarasota, Florida.

c.       Defendant, James F. Slattery, resides in Sarasota, Florida, and is the agent and owner of Defendant, YSI, and controls JFS Development, LLC..

## PARTIES

4.       At all times material hereto, Plaintiff, Mims, was and continues to be a resident of Broward County Florida.

5.      At all times material hereto, Plaintiff, Williams, was and continues to be a resident of Broward County Florida.

6.      At all times material hereto, Plaintiff, Mobley, was and continues to be a resident of Broward County Florida.

7.      At all times material hereto, Plaintiff, Ortega, was and continues to be a resident of Palm Beach County Florida.

8.      At all times material hereto, Plaintiff, Harris, was and continues to be a resident of Broward County Florida.

9.      At all times material hereto, Plaintiff, Blue, was and continues to be a resident of Broward County Florida.

10.     At all times material hereto, Plaintiffs were an "employee" within the meaning of the FLSA.

11.     Defendant Youth Services International, Inc. is a corporation organized under the laws of the State of Florida with its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232.

12.     Defendant Youth Services International Holding Inc. has its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232.

13.     Defendant JFS Development, LLC has its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232, and is listed by YSI as their holding company.

14.     Defendant James Slattery resides in Sarasota, Florida, and is the President of Defendant YSI and controls JFS Development, LLC.

3

15.     YSI is in the business of operating juvenile residential correctional, commitment and rehabilitative facilities in Florida and elsewhere.  YSI provides services in Florida through contracts with the Florida Department of Juvenile Justice, a department and agency of the State of Florida.

16.     YSI has contracted with the Florida Department of Juvenile Justice, to run multiple facilities.  Eight (8) facilities are currently operated by YSI in Florida: 1) Thompson Academy located at 1150 Hibiscus Drive, Pembroke Pines, FL 33025, 2) Broward Girls Academy located at 8301 S Palm Drive, Pembroke Pines, FL 33025, 3) Palm  Beach Regional Correctional Center located at 9680 Process Drive, West Palm Beach, FL 33411, 4) St. Johns Juvenile Correctional Facility in St. Augustine, 5) St. Johns Youth Academy in St. Augustine, Marion Juvenile Correctional Facility, 6) Marion Juvenile Correctional Facility in Ocala; 7) JoAnn Bridges Academy in Greenville, and 8) Santa Rosa Youth Academy in Holt.

17.     At all times hereto, Defendant YSI is an employer authorized to do business and doing business in Florida, including in Broward County, Florida, and Palm Beach County, Florida, and at all times relevant is an "employer" with the meaning of §3(d), 29 U.S.C. §203(d), of the FLSA.

18.     At all times material hereto, Defendant, Slattery, was the President of Defendant YSI and is therefore an "employer" within the meaning of the FLSA.

19.     At all times material hereto, Defendant, YSI, regularly owned and operated a business engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and §203(s).

20.     At all times material hereto, annual gross revenue of Defendant, YSI, was in excess of $500,000.00 per annum during the relevant time periods and is therefore an enterprise within the meaning of the FLSA.

21.     The additional persons who may become plaintiffs in this action are employees who held non-exempt positions similarly situated to Plaintiff and were required to work between at least 20 to 60 minutes per shift without pay, and who worked in excess of forty (40) hours during one of more weeks during the relevant time periods but who did not receive pay at one and one-half times their regular rate for their hours worked in excess of forty (40) hours.

22.     At all times material hereto, the work performed by Plaintiffs was directly essential to the business performed by the Defendant.

23.     At all times material hereto, Plaintiffs were "engaged in commerce" within the meaning of the FLSA.

## STATEMENT OF FACTS

### General Allegations

24.     At all times material hereto, Defendants, a for profit corporation provide comprehensive programs and services available to government agencies serving at-risk youth.

25.     Defendants is able to provide such services based on contracts with State Governments, including the State of Florida.

26.     James Slattery has represented to the State of Florida that he is responsible for YSI complying with all federal and state wage and hour laws.

27.     Due to the fixed amount YSI is paid based on contract, Defendant maintains a rigid cost structure, including a fixed or budgeted number of labor hours that is allowed for each facility to be worked.

28.     At all times relevant hereto, Plaintiffs were employed by Defendants as non-exempt hourly paid employees.

29.     At all times relevant hereto, Defendants operate each juvenile correctional facility, 365 days per year / 24 hours per day.  The daily operations are sub-divided into three shifts: (a) 07:00 to 15:00; (b) 15:00 to 23:00; and (c) 23:00 to 07:00.  In mid-2012, daily operations shifted one hour earlier, so daily operations are currently sub-divided into three shifts: (a) 06:00 - 14:00; (b) 14:00 to 22:00; and (c) 22:00 to 06:00.

30.     Renza Craig Ferguson ("Ferguson") was employed by YSI as the Program Administrator at Thompson Academy in December 2009.

31.     Jesse E. Williams, Jr., is the Senior Vice President of Juvenile Operations at YSI.

32.     At the beginning of each shift, Plaintiffs, and all similarly situated employees, were required to go to a facility briefing to discuss the events of the prior shift and only after the debriefing, was the incoming shift allowed to relieve the employees who were working during the earlier shift.

33.     During this overlap which was at least 20 minutes and sometimes as much as 60 minutes, (depending on the employee and their post in the facility), the employees from the previous shift were required to stay at their post until they were relieved by the incoming employees.

34.     During this overlap, and while the prior shift employees stayed at their post, the time-clock automatically clocked out them out employee at the scheduled end of the shift.

35.     The result was that defendants knowingly and maliciously failed to pay all non-exempt employees for any 'stay time' they incurred at the end of each shift; they were essentially working for free off the clock.

36.     "Stay time" violations occur three times a day, at the time when there is a shift change at the facility.

37.     Defendants are fully aware that all facility time clocks automatically clocks out employees at the scheduled end of their shift as they are the ones who had them programmed that way knowing full well that all employees are unable to leave any earlier than 20 minutes after their shift ended.

38.     Defendants did not have in place any corporate missed punch policy or form for the facilities to use.

39.     Those Facilities that did implement a missed punch form destroyed these documents on a monthly basis notwithstanding their obligation to preserve these records by Department of Labor Regulations.

40.     Defendants also required Plaintiffs and all similarly situated employees to stay for a biweekly 1.5 hour meeting after the end of their assigned shift.  Employees were required to stay for this meeting while off the clock.

41.     Defendants also required some Plaintiffs and all similarly situated employees to work double shifts and would not pay them for the additional 8 hours worked.

42.     Defendants also required some Plaintiffs who worked in excess of 40 hours in the first week of a pay cycle, to have their excess hours rolled forward into the second week of a pay cycle to avoid paying overtime.  When too many regular hours were worked during a pay cycle, Plaintiffs would be told they would receive their money on their next paycheck.  Ultimately, Plaintiffs were not paid for these hours.

43.     Defendants willfully refused to pay Plaintiffs and all similarly situated employees for 20 to 60 minutes per day which results in them being shorted in pay from between 2.5 and

5.75 hours per week. Moreover, because of failure to credit and compensate Plaintiffs and all similarly situated employees for these extra hours, the Plaintiffs have also been denied overtime pay when their total hours worked exceeded 40 hours.

44.     Defendants regularly required select employees to work an additional 8 hours at the conclusion of their shift. These double shifts that employees were required to stay for were unpaid.

45.     Defendants willfully refused to pay Plaintiffs who worked double shifts for the extra shift worked. These double shifts would have also qualified for overtime and were not included in the Plaintiffs' appropriate overtime calculations thereby depriving the Plaintiffs of their federally protected right to overtime compensation.

<u>**The Named Plaintiffs**</u>

<u>**Jorin Williams at Thompson Academy**</u>

46.     Plaintiff, JORIN WILLIAMS, was hired on March 8, 2010 as a youth counselor with the Defendants at Thompson Academy.

47.     Plaintiff, JORIN WILLIAMS, was paid 10.38 dollars per hour.

48.     From March of 2010 and continuing through the end of his employment in September 13, 2011, Williams routinely worked an additional 45 minutes beyond his scheduled shift. Additionally, Williams was required to stay for an unpaid 1.5 hour meeting every two weeks. During the 81 weeks he worked as a youth counselor, Plaintiff Williams worked 4.5 overtime hours per week in which he did not receive overtime pay at the rate of time and one half. Plaintiff JORIN WILLIAMS is then entitled to at least $5,675.27 for unpaid overtime (81 weeks x 4.5 hours x $15.57).

49.     On June 21, 2011, Williams filed a formal written on the "THOMPSON ACADEMY GRIEVANCE FORM and submitted it to Thompson Academy's Grievance Box. Mr. Williams' letter stated "Starting last year of November, I had been having problems with the HR department of Thompson Academy.  Ms. Clark-Walker has made one too many mistakes on my paycheck ….. Something has to be done, and to this day I'm still missing extra hours of pay." He continued about Ms. Clark-Walker's response to his complaints about his paycheck and wrote:

> She informed me that it was my fault that I didn't get paid, because I didn't clock-in on the time clock, but I did write of four pieces of documents stating that I was present on the units. All supervisors should make sure all staff clock-in, it is the law of the United States that if a man/woman works he should be paid his wages. Also, Mrs. Wallace submitted documents to corporate to late and I didn't receive pay for 2 weeks and also for 2 months my money was going into the wrong account. To this day I am this time missing hours of pay that I did not get paid for at Thompson.

50.     In August 2011, Administrator Ferguson held a facility-wide meeting.  At this meeting, Mr. Williams stood up and verbally complained to Administrator Ferguson that he and all staff were not being paid properly for all hours worked and that their pay practices were not legal.

51.     As a result of Williams speaking up, in front of all staff, Administrator Ferguson advised Williams to "stop talking and sit down."

52.     In August 2011, Administrator Ferguson again called for a meeting, but this time only with overnight staff.  Ferguson stated: "…if anyone was to get in contact with corporate (that) they will be penalized for in."   Ferguson also stated that he would be required to terminate the reporting employee because he would "feel you are causing problems for the facility itself." During this meeting, Ferguson specifically referenced Jorin William as an example for the rest of the staff not to follow.

53.     On September 1, 2011, Mr. Williams sent a letter to Katrin Roote at Corporate complaining about Ferguson holding Williams out to the rest of the facility as a poor example. Specifically. Williams wrote that Ferguson stated he "only called corporate to complain and cause trouble."

54.     Four weeks later, on September 13, 2011, Plaintiff Williams was terminated.

55.     On September 28, 2011, Mr. Williams spoke directly to YSI Vice President Jessie Williams regarding widespread FLSA violations at Thompson Academy and his desire to be reinstated.

56.     As a result of Mr. Williams's conversation with VP Jessie Williams nothing changed at the facility and Mr. Williams was not reinstated as he requested.

57.     Starting in June 2011 until he was terminated in September 2011, Mr. Williams in writing and verbally complained to his supervisors and corporate about not being paid properly, and repeatedly attempted to submit missed punch forms.  Ultimately, corporate never provided Mr. Williams or the employees at Thompson any assistance, and Mr. Williams was fired.

58.     Missed Punch Forms were never entered at the direction of Administrator Craig Ferguson in order to maintain budgetary restrictions ordered by Youth Services International.

59.     In Williams' December 2011 unemployment hearing, Thompson Academy Human Resources officer,  Michelle Clark,  stated the following under oath on behalf of the company:

> I do not keep missed punch forms. If they (the employees) do not come in by the end of that month and they have any problems with their time I discard all the mispunch forms….. I put them in the shred box. They are not anything provided by corporate. It is something the facility started. It is actually something I started.

60.     Defendants did not have any policy on correcting missed punches, or for compensating employees for the times the system clocked them out automatically, though they

were still working and furthermore, they had no policy or procedure for the retention and preservation of time records as mandated by the U.S. Department of Labor and 29 U.S.C. § 211.

**Tonya Mobley at Broward Girls Academy**

61.    Plaintiff, TONYA MOBLEY, was hired on November 15, 2011 as a Youth Counselor position at the Broward Girls Academy facility.  Mobley was paid $10.37 per hour throughout the course of her employment and was told she would receive overtime compensation for all hours worked in excess of 40 hours.  From November 2011 and continuing through the end of her employment in May 30, 2012, Plaintiff, Mobley, routinely worked in excess of 25 minutes beyond her scheduled shift.   Additionally, Mobley was required to stay for an unpaid 1.5 hour meeting every two weeks.  However, the Defendants would not pay for this time.  During the 26 weeks she worked as a Youth Counselor, Plaintiff Mobley worked 2.83 unpaid overtime hours per week in which  she did not receive overtime pay at the rate of time and one half.  Plaintiff TONYA MOBLEY is then entitled to at least $1,145.64 for unpaid overtime.

**Jeffrey Ortega at Palm Beach Juvenile Correctional Facility**

62.    Plaintiff, JEFFREY ORTEGA, was hired on October 26, 2010 as a youth counselor position at the Palm Beach Juvenile Correctional Facility.  Ortega was paid $11.54 per hour throughout the course of his employment and was told he would receive overtime compensation for all hours worked in excess of 40 hours.  From October 2010 and continuing through the end of her employment in July 28, 2011, Plaintiff, routinely worked in excess of 25 minutes after the scheduled completion of each shift. Additionally, Ortega was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 38 weeks he worked as a youth counselor, Plaintiff JEFFREY ORTEGA worked 2.83 unpaid overtime hours per week in which

he did not receive overtime pay at the rate of time and one half.   Plaintiff JEFFREY ORTEGA is then entitled to at least $2,423.40 for unpaid (40 weeks x 3.5 hours x $17.31).

### Juanita Mims at Thompson and Broward Girls Academies

63.     Plaintiff, JUANITA MIMS, was hired on December 7, 2009 working as a Youth Counselor at Thompson Academy.  Mims was then transferred to Broward Girls Academy on February 19, 2012.  Mims was paid $10.38 per hour throughout the course of her employment as a Youth Counselor and was told she would receive overtime compensation for all hours worked in excess of 40 hours.  From December 2009 and continuing through until February 2012, Plaintiff routinely worked in excess of 45 minutes beyond the scheduled completion without compensation.  Additionally, Mims was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 113 weeks she worked as a youth counselor, Plaintiff Mims worked 2.83 unpaid overtime hours per week in which she did not receive overtime pay at the rate of time and one half.

64.     From February 20, 2012 through May 22, 2012, Plaintiff, JUANITA MIMS,  was promoted to a non-exempt Supervisor position at Broward Girls Academy.  In this position, she earned a rate of $12.26 per hour. As a Supervisor at Broward Girls Academy, Mims was regularly required to stay at least 30 minutes beyond her scheduled shift.  During the 15 weeks she was as a non exempt supervisor, Mims worked 3.25 unpaid overtime hours per week in which she did not receive overtime pay at the rate of time and one half.  Plaintiff JUANITA MIMS is then entitled to at least $6,605.44 for unpaid overtime ((114 weeks x 2.5 hours x $15.57) + (14 weeks x 3.25 hours x $18.39)).

### Melica Harris at Broward Girls Academy

65.     Plaintiff, MELICA HARRIS, was hired in December 2009 as a non-exempt Unit Supervisor.  Harris was paid $12.26 per hour throughout the course of her employment and was told that she would receive overtime compensation for all hours worked in excess of 40 hours. From December 2009 and continuing through the end of her employment on March 1, 2012, Plaintiff, routinely worked in excess of 45 minutes beyond her scheduled shift.  During the 117 weeks she worked as a supervisor, Plaintiff Harris worked 3.75 unpaid overtime hours per week in which he did not receive overtime pay at the rate of time and one half.  Plaintiff MELICA HARRIS is then entitled to at least $8,068.61 for unpaid overtime (117 weeks x 3.75 hours x $18.39).

### Marcus Blue at Thompson at Thompson Academy

66.     Plaintiff, MARCUS BLUE, was hired in January 2009 as a non-exempt Youth Counselor.  Blue was paid $10.38 per hour throughout the course of his employment and was told he would receive overtime compensation for all hours worked in excess of 40 hours.  From January 2009 and continuing through until January 2012, Plaintiff routinely worked in excess of 45 minutes beyond the scheduled completion of his shift without compensation.  Additionally, Mr. Blue was regularly required to work an unpaid 8 hour double shift every week. Additionally, Blue was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 154 weeks he worked as a youth counselor, Plaintiff Blue worked 12.48 unpaid overtime hours per week in which he did not receive overtime pay at the rate of time and one half. Plaintiff Blue is then entitled to at least $29,924.29 for unpaid overtime (154 weeks x 12.48 hours x $15.57).

### As to All Plaintiffs

67.     Facility Administrators do not allow "stay time" to be paid so as to not go over the budgets provided to them by the YSI Corporate Office.

68.     At all times material hereto, Defendants knowingly failed to pay the Plaintiffs and all similarly situated employees for all hours worked and failed to pay all non exempt employees overtime pay for all overtime hours worked at the rate of time and one-half their hourly rate.

69.     At all times material hereto, Plaintiffs fully performed their obligations as employees of the Defendants.

70.     At all times material hereto Defendants' acts and/or omissions giving rise to this action were not in good faith and at no time did Defendants have reasonable grounds for believing that their acts and/or omissions were not a violation of the FLSA.

71.     Notwithstanding the fact that each Defendant had knowledge regarding its obligation to pay the Plaintiffs an hourly overtime rate, Defendants willfully continue to violate Title 29 U.S.C. §§ 207 by failing to properly pay overtime wage to Plaintiffs and by not paying them any monies for stay time and meetings that occurred off the clock with the knowledge of the company.

72.     Such continuing conduct by the Defendants evidences a willful decision by the Defendants and their agents to violate the overtime provisions of the FLSA.

73.     Additionally, Plaintiffs, in an effort to receive proper pay would submit missed punch forms.

74.      Defendants had a duty to maintain accurate records regarding hours worked by all employees pursuant to Department of Labor Regulations and pursuant to section 11 of the FLSA.

75.     Defendants failure to maintain accurate records, and intentional destruction of missed punch forms that are relevant to supporting Plaintiffs' claim of unpaid overtime hours, will be a significant impairment in the ability to prove Plaintiff's claims.  Accordingly,  the Court should make an adverse inference finding against the Defendants that the information they destroyed would have been beneficial to the Plaintiffs' claims.

## Class Representation Allegations

76.     Plaintiff's state law wage claims are properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23.

77.     The questions of law and fact common to the class include: whether the defendants systematically failed to pay employees for all regular and overtime hours worked by requiring them to work off the clock.

78.     The claims of the representative plaintiffs are typical of the claims of the class members.  Named plaintiffs, Jorin Williams, Tonya Mobley, Jeffrey Ortega, Juanita Mims, and Melica Harris are former youth counselors and non-exempt unit supervisors, have not received pay for all regular and overtime hours worked.

79.     The approximate number of class members is more than two hundred.

80.     The class is defined as all youth counselors, unit supervisors, and all other hourly employees who worked directly with youth within the last four years and have performed services for which the defendants have not paid for time worked for every employee on every shift.  The class may be divided into sub-classes of youth counselors and unit supervisors.

81.     The named plaintiffs will vigorously pursue the claims alleged herein on behalf of themselves and other similarly situated individuals and will therefore adequately protect and represent the interests of each member of the class.

82.     The only claims alleged in the complaint are the common law claims alleged on behalf of the class and the FLSA claims alleged on behalf of all class members who choose to opt-in to the case; thus the class and collection action claims predominate.

83.     Class representation is superior to other available methods for the fair and efficient adjudication of the controversy for a number of reasons including the following: this case challenges the policy and practice of a large employer, and many employees may be reluctant to bring claims individually for fear of retaliation; some class members may have only worked for the defendant for a short period of time and their individual damages would not be substantial enough to be worth the cost and effort of bringing individual claims; many class members will not have the resources to bring their claims individually; and it would be highly inefficient to require each employee affected by the practices challenged herein to bring his or her own individual claim.

84.     Plaintiffs have retained the Law Firm of Michael A. Hoffman, Esq., P.A., and the Law Firm of Michael A. Pancier, P.A. to represent them in this litigation and has agreed to pay the firms a reasonable fee for their services.

## COUNT I

### VIOLATION OF OVERTIME PROVISIONS
### OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. §§ 207

85.     Plaintiffs allege and reallege paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     Plaintiffs were entitled to be at the rate of 1.5 times their regular rate of pay for all overtime hours worked. Accordingly, the Plaintiffs' overtime rates were as follows:

    a.   Williams: $15.57;

    b.  Mobley: $15.57;

    c.  Ortega: $17.31;

    d.  Mims:

        i.  At Thompson: $15.57;

        ii.  At Broward Girls: $18.39;

    e.  Harris: $18.39;

    f.  Blue: $15.57.

87.    Upon information and belief, Plaintiffs are entitled to unpaid overtime wages as follows:

    a.  Williams:  $5,675.27 (81 weeks x 4.5 hours x $15.57);

    b.  Mobley:  $1,145.64 (26 weeks x 2.83 hours x $15.57);

    c.  Ortega: $2,423.00 (40 weeks x 3.5 hours x $17.31)

    d.  Mims:

        i.  At Thompson: $5,768.69 (114 weeks x 2.5 hours x $15.57);

        ii.  At Broward Girls:  $836.75 (14 weeks x 3.25 hours x $18.39);

    e.  Harris: $8,068.61 (117 weeks x 3.75 hours x $18.39);.

    f.  Blue: $29,924.29 (154 weeks x 12.48 hours x $15.57).

88.    Plaintiffs are also owed an equal amount as liquidated damages under the FLSA.

89.    Plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**WHEREFORE,** Plaintiffs, Williams, Mobley, Ortega, Mims, Harris, and Blue respectfully request that judgment be entered against Defendants, YSI, YSI Holding, JFS, and James Slattery:

     a.     Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the FLSA;

     b.     Awarding Plaintiffs unpaid overtime wages as follows:

     (1) Williams: $5,675.27 plus an equal amount as liquidated damages totaling **$11,350.53**;

     (2) Mobley: $1,145.64 plus an equal amount as liquidated damages totaling **$2,291.28**;

     (3) Ortega: $2,423.40 plus an equal amount as liquidated damages totaling **$4,846.40**;

     (4) Mims: $6,605.44 plus an equal amount as liquidated damages totaling **$13,210.88**; and

     (5) Harris: $8,068.61 plus an equal amount as liquidated damages totaling **$16,137.22.**

     (6) Blue: $29,924.29 plus an equal amount as liquidated damages totaling **$59,848.58.**

     c.     Awarding Plaintiffs' attorneys' fees, costs, and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

     d.     Awarding Plaintiffs post judgment interest and

     e.     Ordering any other and further relief that this Court may deem just and proper.

## COUNT II

## STATUTORY CLASS ACTION

90.     Plaintiffs allege and reallege paragraphs 1 through 85 of this Complaint as if fully set forth herein.

91.     Plaintiffs bring this action on their own behalf as well as on behalf of other current and former non-exempt youth counselors and supervisors of Defendants similarly situated for relief pursuant to the FLSA, as amended, 29 U.S.C. § 216(b).

92.     Plaintiffs are similarly situated to other of Defendants' Youth Counselors, Unit Managers, and Shift Supervisors who are not paid for all hours and not being paid overtime hours as a result of Defendants' statewide policy and practice of: 1) forcing them to work off the clock; and 2) shifting hours from one week of pay to another to avoid overtime wages. Defendants' unlawful practices as set forth herein have affected all current and former youth counselors and non-exempt supervisors who worked for Defendants ("Members of the Class").

93.     Defendants' failure to pay for all hours worked and overtime as required by the FLSA results from a policy or practice applicable to Plaintiffs and the Members of the Class. Application of this policy does not depend on the personal circumstances of the Plaintiffs or those joining this lawsuit.  Rather, the same policy or practice that resulted in the non-payment of regular and overtime wages applied to all Members of the Class.   Accordingly, the class is properly defined as: "All current and former employees of the Defendant who worked as youth counselors, unit managers, shift supervisors, and all hourly employees who were not paid for all regular and overtime hours worked."

94.     Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay for all hours worked and overtime compensation with respect to Plaintiffs and Members of the Class.

95.     Records, if any, concerning the actual number of hours worked by Defendants' employees and former employees and the actual compensation paid to Defendants' employees and former employees and the actual compensation paid to Defendants' employees and former employees similarly situated to Plaintiffs are in the possession, custody, and control of the Defendants.  These individuals are unable to state at this time the exact amount due and owing each similarly situated employee.  Such information will be obtained by appropriate discovery proceeding to be taken promptly in this case and, if necessary, they will then seek leave of the Court to amend the Complaint to set forth the precise amount due each Plaintiff.

96.     All similarly situated Members of the Class are owed their unpaid overtime pay for each hour they worked and were not paid plus an equal amount as liquidated damages.

97.     Due to the intentional, willful, and unlawful acts of Defendants, all similarly situated Members of the Class have suffered damages and will continue to suffer damages and incur attorneys' fees and costs.

**WHEREFORE**, those similarly situated employees and former employees who have or will opt in to this action demand that judgment be entered against Defendants:

a.     Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the overtime provisions of the FLSA;

b.     Awarding pursuant to Section 16(b) of the FLSA liquidated damages equal in amount to the unpaid compensation due;

c.     Awarding Plaintiffs reasonable attorneys' fees and costs and expenses of this litigation pursuant to 29 U.S.C. §§ 216 (b);

d.     Awarding Plaintiffs post judgment interest; and

e.     Ordering any other and further relief this Court deems to be just and proper.

## COUNT III

### FLSA RETALIATION AGAINST WILLIAMS
### BY YOUTH SERVICES INTERNATIONAL, INC.

98.     Plaintiff Williams adopts and realleges paragraphs 1 through 85 of this Complaint as if fully set forth herein.

99.     29 U.S.C. §215(a)(3) prohibits an employer from discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to instituted any proceeding under the FLSA or has testified or is about to testify in any such proceeding.

100.    William's actions in raising the multiple complaints about the Defendants' failure to pay overtime and otherwise require employees to work off the clock constitutes protected activity under the FLSA.

101.    YSI retaliated against Williams for engaging in activity protected by the FLSA by taking unwarranted action against him and terminating his employment.

102.    As a result, Williams has suffered lost wages and other damages.

**WHEREFORE,** Plaintiff, Williams, respectfully request that judgment be entered jointly and severally in his favor against Defendants, YSI, YSI Holding, JFS, and James Slattery:

a.     Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of section 15(a)(3) of the FLSA;

      b.      Awarding Plaintiff front pay in lieu of reinstatement;

      c.      Awarding Williams monetary damages in the form of lost wages and an additional amount as liquidated damages pursuant to 29 U.S.C. §216(b),

      d.      Awarding post-judgment interest;

      e.      Awarding reasonable attorneys' fees and costs; and

      f.      Awarding such other relief as this Court deems just and proper.

**COUNT IV**

**UNJUST ENRICHMENT/QUANTUM MERUIT**

103.    Plaintiffs realleges and realleges paragraphs 1 through 85 of this Complaint as if fully set forth herein.

104.    Plaintiffs provided valuable services the Defendants and Defendants have enjoyed the benefit of those services.

105.    Throughout Plaintiffs' performance, the Defendants understood that Plaintiffs provided their services for the benefit of the Defendants and that Plaintiffs expected to be paid their regularly hourly rate for all hours worked.

106.    Defendants required Plaintiffs to work off the clock.

107.    Defendants refused to pay Plaintiffs for the hours worked off the clock thereby causing damages to the Plaintiffs.

108.    Plaintiffs are entitled to their regularly hourly rate for the pay they earned that was not distributed to them. Under the circumstances, it would be unjust for the Defendants to retain the benefit of the Plaintiffs' services on behalf of the Defendants and refuse to make payment to the Plaintiffs.

**WHEREFORE**, Plaintiffs and those similarly situated employees and former employees hereby request that the Court enter judgment in Plaintiffs favor and against the corporate Defendants for damages in quantum meruit and/or unjust enrichment, pre-judgment interest, post judgment interest, and any other relief the Court deems just and proper, including an award of attorneys fees and costs pursuant to section 448.08, Florida Statutes.

## COUNT V

## BREACH OF CONTRACT

109.    Plaintiffs alleges and realleges paragraphs 1 through 83 of this Complaint as if fully set forth herein.

110.    Plaintiffs and Defendants had an agreement that Plaintiffs would be paid their agreed upon hourly rate for all regular hours worked and  overtime compensation when they worked in excess of 40 hours per week.

111.    Plaintiffs fully performed by working all the hours the Defendants required of them.

112.    Defendants breached this agreement by Defendants refused to pay Plaintiffs for all hours worked and required Plaintiffs to work off the clock.

113.    As a direct and proximate result of Defendants' breach, the Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs and those similarly situated employees and former employees hereby request that the Court enter judgment in Plaintiffs favor and against the corporate Defendants for damages in quantum meruit and/or unjust enrichment, pre-judgment interest, post judgment interest, and any other relief the Court deems just and proper, including an award of attorneys fees and costs pursuant to section 448.08, Florida Statutes.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand trial by jury as to all issues so triable as a matter of right.

Date:   November 25, 2012

Respectfully submitted,

Law Offices of Michael A. Pancier, P.A.          Michael A. Hoffman, Esq., P.A.
**Co-Counsel for Plaintiffs**                    **Co-Counsel for Plaintiff**
9000 Sheridan Street, Suite 96                   4000 Hollywood Blvd, Ste 725-S
Pembroke Pines, FL 33024                         Hollywood, FL  33021
TEL: (954)862-2217                               Tel: (954)665-5290
FAX: (954)862-2287                               Fax: (954)944-1932
mpancier@pancierlaw.com                          Michael@MAHlawyer.com


_____/s/ Michael A. Pancier, Esq.___            _____/s/ Michael A. Hoffman, Esq.___
FLA BAR # 958585                                 FLA BAR # 89549